File No. **11-1002**

# APPRAISAL OF



### LOCATED AT:

1601 Wood Duck Court
Woodbridge, VA  22191

### FOR:

Hassan S. Navabi
1601 Wood Duck Court
Woodbridge, VA 22191

### BORROWER:

Hassan S. Navabi

### AS OF:

February 20, 2011

### BY:

Leah W. Powell

6223 Edgewater Drive, Falls Church, VA  22041   703-304-6552

# UNIFORM RESIDENTIAL APPRAISAL REPORT

APPRAISAL SUMMARY REPORT

File No. 11-1002

## Property Description / Subject

| Field | Value |
|---|---|
| Property Address | 1601 Wood Duck Court |
| City | Woodbridge |
| State | VA |
| Zip Code | 22191 |
| Legal Description | Dawson Landing Section 3 Lot 27 |
| County | Prince William |
| Assessor's Parcel No. | 159686 |
| Tax Year | 2011 |
| R.E. Taxes $ | 4,432.00 |
| Special Assessments $ | Included |
| Borrower | Hassan S. Navabi |
| Current Owner | Hassan S. Navabi |
| Occupant | [X] Owner [ ] Tenant [ ] Vacant |
| Property rights appraised | [X] Fee Simple [ ] Leasehold |
| Project Type | [X] PUD [ ] Condominium (HUD/VA only) |
| HOA$ | 9.00 /Mo. |
| Neighborhood or Project Name | Dawson Landing |
| Map Reference | 22 F-8 |
| Census Tract | N/A |
| Sale Price $ | N/A |
| Date of Sale | N/A |
| Description and $ amount of loan charges/concessions to be paid by seller | N/A |
| Lender/Client | Hassan S. Navabi |
| Address | 1601 Wood Duck Court, Woodbridge, VA 22191 |
| Appraiser | Leah W. Powell |
| Address | 6223 Edgewater Drive, Falls Church, VA 22041 |

## Neighborhood

| | | | | | |
|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | Predominant occupancy | [X] Owner [ ] Tenant [X] Vacant (0-5%) [ ] Vacant (over 5%) | Present land use %: One family 70%, 2-4 family, Multi-family 10%, Commercial 20%, Vacant | Land use change: [X] Not likely [ ] Likely [ ] In process  To: |
| Built up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | | | |
| Growth rate | [ ] Rapid [X] Stable [ ] Slow | | | | |
| Property values | [ ] Increasing [X] Stable [ ] Declining | | | | |
| Demand/supply | [ ] Shortage [ ] In balance [X] Over supply | | | | |
| Marketing time | [ ] Under 3 mos. [X] 3-6 mos. [ ] Over 6 mos. | | | | |

Single family housing: PRICE $(000) Low 75, High 610, Predominant 250-75; AGE (yrs) Low New, High 75, Predominant 10-15

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The subject property is bounded, more or less, by zip code 22191.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
The subject neighborhood is proximate to metropolitan Washington, DC employment centers, major transportation routes, schools, shopping centers, and supporting municipal services. Neighborhood houses vary in style, age, utility, appeal, and marketability. Maintenance of neighborhood properties appears to be adequate. The subject neighborhood is considered to be established and is well accepted in the marketplace.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
Based upon an historical analysis of prior sales activity as well as an examination of current available listings, the appraiser concludes that current market conditions are stable. Prior market conditions would likely indicate a declining market. However, data for the last 2 quarters indicate median comparable sales prices of $337,000 and $345,431. As of the effective date of this appraisal, there are 2 active comparable properties.

## PUD

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? [ ] YES [X] NO
Approximate total number of units in the subject project 280. Approximate total number of units for sale in the subject project 2.
Describe common elements and recreational facilities: Common areas.

## Site

| Field | Value |
|---|---|
| Dimensions | 214' x 82' x 191' x 39' x 48' x 81' (lot with curved corner) |
| Site area | 25400 Sq.Ft. |
| Corner Lot | [X] Yes [ ] No |
| Specific zoning classification and description | R2 Suburban Residential |
| Zoning compliance | [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning |
| Highest & best use as improved | [X] Present use [ ] Other use (explain) N/A |
| Topography | Gently Rolling |
| Size | Conforms to Neigh. |
| Shape | Approx. Rectangular |
| Drainage | Appears Adequate |
| View | Average for Neigh. |

Utilities (Public / Other): Electricity [X], Gas [X], Water [X], Sanitary sewer [X], Storm sewer [X]

Off-site Improvements (Type / Public / Private): Street Asphalt [X]; Curb/gutter Concrete [X]; Sidewalk None-Typical; Street lights None-Typical; Alley None-Typical

Landscaping Average for Neigh.; Driveway Surface Average for Neigh.; Apparent easements Utility/No Impact; FEMA Special Flood Hazard Area [ ] Yes [X] No; FEMA Zone X; Map Date 1/5/95; FEMA Map No. 51153C 0307D

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): The appraiser has not examined a survey prepared with the benefit of a title report therefore, we cannot comment regarding adverse easements, encroachments, or special assessments on the subject site.

## Description of Improvements

### General Description
- No. of Units: 1
- No. of Stories: 2
- Type (Det./Att.): Detached
- Design (Style): Colonial
- Existing/Proposed: Existing
- Age (Yrs.): 14 Yrs.
- Effective Age (Yrs.): 6 Yrs.

### Exterior Description
- Foundation: Concrete
- Exterior Walls: Brick/Siding
- Roof Surface: Comp.Shingle
- Gutters & Dwnspts.: Metal
- Window Type: Double Hung
- Storm/Screens: Yes
- Manufactured House: No

### Foundation
- Slab: None
- Crawl Space: None
- Basement: Yes
- Sump Pump: None Noted
- Dampness: None Noted
- Settlement: None Noted
- Infestation: None Noted

### Basement
- Area Sq.Ft.: 1362
- % Finished: 90% Appr.
- Ceiling: Drywall
- Walls: Drywall
- Floor: Cpt/V
- Outside Entry: Yes
- Walkout: 

### Insulation
- Roof: Cncld
- Ceiling: Cncld
- Walls: Cncld
- Floor: Cncld
- None
- Unknown *R-Fac. [X]
- *No Access

### Rooms

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | 2 | | | .5 | | | 1,362 |
| Level 1 | X | 1 | 1 | 1 | | 1 | | | .5 | | MornRm | 1,382 |
| Level 2 | | | | | | | | 3 | 2 | | SitRm | 1,202 |

Finished area above grade contains: 9 Rooms; 3 Bedroom(s); 2.5 Bath(s); 2,584 Square Feet of Gross Living Area

### Interior
- Floors: Wd/Cpt/Vny/Avg
- Walls: Drywall/Avg
- Trim/Finish: Painted Wood/Avg
- Bath Floor: Wood/Vny/Avg
- Bath Wainscot: Ceramic/Avg
- Doors: Hollowcore/Avg
- N/A

### Heating
- Type: FWA
- Fuel: Gas
- Condition: Average

### Kitchen Equip.
- Refrigerator [P]
- Range/Oven [X]
- Disposal [X]
- Dishwasher [X]
- Fan/Hood [X]
- Microwave [ ]
- Washer/Dryer [P]

### Attic
- None [X]
- Stairs [ ]
- Drop Stair [ ]
- Scuttle [X]
- Floor [ ]
- Heated [ ]
- Finished [ ]

### Amenities
- Fireplace(s) # 1 [X]
- Patio Concrete [X]
- Deck Wood [X]
- Porch [ ]
- Fence [ ]
- Pool [ ]

### Car Storage
- None [ ]
- Garage # of cars [ ]
- Attached 2-Car
- Detached
- Built-In
- Carport
- Driveway

Cooling: Central Yes; Other N/A; Condition Average

Additional features (special energy efficient items, etc.): The subject property has the following features: kitchen w/Corian counters/island/double wall oven; crown moulding; wood deck w/stairs; morning room extension. Basement finished after 2005 purchase per homeowner.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: An inspection of the subject property revealed no inadequacies. The floor plan conforms for this style home and price range. The dwelling has been periodically maintained and is considered to be in average physical condition. It should be noted that the subject property has 3 bedrooms plus sitting room; sitting room could be converted to 4th bedroom for nominal cost; no adjustment is made for this feature.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: See Attached Addendum.

APPRAISAL SUMMARY REPORT
UNIFORM RESIDENTIAL APPRAISAL REPORT   File No. 11-1002

## Valuation Section

### COST APPROACH

ESTIMATED SITE VALUE ............................................ = $ _____ N/A
ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:
Dwelling __2,584__ Sq. Ft. @ $ _____ = _____ 0
Bsmt. 1362 _____ Sq. Ft. @ $ _____ = _____ 0
_____ = _____
Garage/Carport __480__ Sq. Ft. @ $ _____ = _____ 0
Total Estimated Cost New .............................. = $ _____ 0
Less  __6__ Physical | Functional | External   Est. Remaining Econ. Life: __54__
Depreciation                                = _____ 0
Depreciated Value of Improvements .............. = $ _____ 0
"As-is" Value of Site Improvements ................ = $ _____
INDICATED VALUE BY COST APPROACH ........ = $ _____ 0

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):
The cost approach is applicable, but not necessary. Per Fannie Mae's Handbook for Appraisers, "as the effective age of the property increases, the reliability of the cost approach typically decreases because of the subjectivity of estimating depreciation and the difficulty in accurately estimating the reproduction cost of the improvements." Consequently, it is not included as part of this report.

### SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1601 Wood Duck Court Woodbridge | 16959 Cass Brook Ln Woodbridge, VA 22191 | | 2810 Burrough Hill Ln Woodbridge, VA 22191 | | 1596 Fish Hawk Ct Woodbridge, VA 22191 | |
| Proximity to Subject | | 2.7 Mile | | 2.5 Mile | | 3 Blocks | |
| Sales Price | $ N/A | $ 291,555 | | $ 280,000 | | $ 337,000 | |
| Price/Gross Liv. Area | $ 0.00 | $ 89.65 | | $ 107.28 | | $ 160.94 | |
| Data and/or Verification Sources | Inspect Public Records | MLS#PW7460500/Agent PublicRecords/Visual | | MLS#PW7361191 PublicRecords/Visual | | MLS#PW7385058 PublicRecords/Visual | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing Concessions | N/A | Cash $ Sbsdy:$0 | | Cash $ Sbsdy:$0 | | VA $348,121 Sbsdy:$9872.06 | -9,500 |
| Date of Sale/Time | N/A | 01/24/2011 | No adj. | 11/15/2010 | No adj. | 09/29/2010 | No adj. |
| Location | Dawson Landing | River Oaks | No adj. | River Oaks | No adj. | Dawson Landing | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 25400 Sq.Ft. | 9,762 SqFt | 25,000 | 11,530 SqFt | 10,000 | 20,120 SqFt | No adj. |
| View | Average | Average | | Average | | Average | |
| Design and Appeal | Colonial | Colonial | | Colonial | | Detached | |
| Quality of Construction | Brick/Siding/Avg | Siding/Avg | No adj. | Stuc/Siding/Avg | No adj. | Siding/Avg | No adj. |
| Age | 14 Yrs. | 17 Yrs. | No adj. | 9 Yrs. | No adj. | 15 Yrs. | No adj. |
| Condition | Average | Fair | 30,000 | Average | | Average | |
| Above Grade Room Count  Total/Bdrms/Baths | 25 / 9 / 3 / 2.50 | 9 / 4 / 2.50 | No adj. | 9 / 4 / 2.50 | No adj. | 9 / 4 / 2.50 | No adj. |
| Gross Living Area | 2,584 Sq.Ft. | 3,252 Sq.Ft. | -16,700 | 2,610 Sq.Ft. | 0 | 2,094 Sq.Ft. | 12,300 |
| Basement & Finished | 1362 Sq.Ft. | 1276 SqFt | No adj. | 1620 SqFt | No adj. | 1031 SqFt | No adj. |
| Rooms Below Grade | 2RR,.5BA | RR,BA | 5,000 | RR,BA | 5,000 | RR,BA | 5,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Typical | Average | | Average | | Average | |
| Garage/Carport | 2-Car Garage | 2-Car Garage | | 2-Car Garage | | 2-Car Garage | |
| Porch, Patio, Deck, | Patio,Deck | Patio | 8,000 | ScrnPor, Patio | -5,000 | Deck | 5,000 |
| Fireplace(s), etc. | 1 Fireplace | 2 Fireplaces | -1,000 | 1 Fireplace | | 1 Fireplace | |
| Fence, Pool, etc. | None | None | | None | | None | |
| NewrKitch/Bath | None | None | | None | | None | |
| Net Adj. (total) | | [X] + [ ] - $ 50,300 | | [X] + [ ] - $ 10,000 | | [X] + [ ] - $ 12,800 | |
| Adjusted Sales Price of Comparable | | Gross: 29.4% Net: 17.3% $ 341,855 | | Gross: 7.1% Net: 3.6% $ 290,000 | | Gross: 9.4% Net: 3.8% $ 349,800 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): As adjusted, the comparable sales provide an accurate, reliable indication of the subject's current estimated market value, as defined. Overall, the subject property is considered to conform well to the demands of market participants in this neighborhood. Per MRIS and agent, Comp 1 is adjusted for inferior condition: agent advises deck is rotten, kitchen has no appliances, cigarette smoke damage in several rooms, needs paint and carpet. All comparables were given equal consideration, with support from pending sale.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | 08/01/2005 $710,000 Tax Records | 08/25/2010 $387,618  Foreclosure Tax Records | No prior sale reported in last year Tax Records | No prior sale reported in last year Tax Records |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: Per MRIS, prior sale of Comp 1 is a foreclosure, not an arm's length transaction. Per MRIS, current sale of Comp 2 is a potential short sale. Comps reflect range of types of transactions in the subject market's area.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................................... $ 340,000
INDICATED VALUE BY INCOME APPROACH (If Applicable)   Estimated Market Rent $ ____ N/A ____ /Mo. x Gross Rent Multiplier ____ N/A ____ = $ 0

This appraisal is made [X] "as is"   [ ] subject to the repairs, alterations, inspections or conditions listed below   [ ] subject to completion per plans and specifications.
Conditions of Appraisal: See Attached Addendum.

### RECONCILIATION

Final Reconciliation: The Market Data Approach was given most consideration in the final reconciliation of current market value for the subject property with support from the cost approach. Lack of available data to develop a meaningful income approach to value renders this approach inappropriate.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised __6/93__ ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF __2/20/2011__
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ __340,000__.

APPRAISER:
Signature: /s/ Leah W. Powell
Name: Leah W. Powell
Date Report Signed: 02/26/2011
State Certification #: 4001 004735   State VA
Or State License #:           State

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature:
Name:
Date Report Signed:
State Certification #:           State
Or State License #:           State
[ ] Did   [ ] Did Not Inspect Property

# APPRAISAL SUMMARY REPORT
## UNIFORM RESIDENTIAL APPRAISAL REPORT

Supplemental Valuation Section    File No. 11-1002

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 1601 Wood Duck Court Woodbridge | 1847 Strickland Ct Woodbridge, VA 22191 | | 15318 Egret Ct Woodbridge, VA 22191 | | | |
| Proximity to Subject | | 1 Mile | | 2 Blocks | | | |
| Sales Price | $ N/A | $ 399,126 | | $ CP 380,000 | | $ | |
| Price/Gross Liv. Area | $ 0.00 | $ 129.80 | | $ 152.98 | | $ | |
| Data and/or Verification Sources | Inspect Public Records | MLS#PW7515316/Agent PublicRecords/Visual | | MLS#PW7475506 PublicRecords/Visual | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing Concessions | N/A | Cnvtl $319,300 Sbsdy:$0 | | Pending Sale Sbsdy:$10000 | -10,000 | | |
| Date of Sale/Time | N/A | 02/14/2011 | No adj. | CD 1/13/2011 | No adj. | | |
| Location | Dawson Landing | Newport | No adj. | Dawson Landing | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 25400 Sq.Ft. | 14,061 SqFt | No adj. | 22,407 SqFt | No adj. | | |
| View | Average | Average | | Average | | | |
| Design and Appeal | Colonial | Colonial | | Colonial | | | |
| Quality of Construction | Brick/Siding/Avg | Siding/Avg | No adj. | Brk/Siding/Avg | | | |
| Age | 14 Yrs. | 11 Years | | 17 Years | | | |
| Condition | Average | Average | | Average | | | |
| Above Grade Room Count | Total 9 / Bdrms 3 / Baths 2.50 | Total 8 / Bdrms 4 / Baths 2.50 | No adj. | Total 9 / Bdrms 4 / Baths 2.50 | No adj. | Total / Bdrms / Baths | |
| Gross Living Area | 2,584 Sq.Ft. | 3,075 Sq.Ft. | -12,300 | 2,484 Sq.Ft. | 2,500 | Sq.Ft. | |
| Basement & Finished Rooms Below Grade | 1362 Sq.Ft. 2RR,.5BA | 1455 SqFt RR,BR,DN,BA | No adj. -10,000 | 1218 SqFt RR,BR,BA | No adj. No adj. | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | | |
| Energy Efficient Items | Typical | Average | | Average | | | |
| Garage/Carport | 2-Car Garage | 2-Car Garage | | 2-Car Garage | | | |
| Porch, Patio, Deck, Fireplace(s), etc. | Patio,Deck 1 Fireplace | Deck 1 Fireplace | 8,000 | Patio, Deck 1 Fireplace | | | |
| Fence, Pool, etc. | None | None | | None | | | |
| NewrKitch/Bath | None | NewerKitch/Baths | -25,000 | NewerKitch/Baths | -25,000 | | |
| Net Adj. (total) | | [ ] + [X] - $ 39,300 | | [ ] + [X] - $ 32,500 | | [X] + [ ] - $ 0 | |
| Adjusted Sales Price of Comparable | | Gross: 13.9% Net: -9.8% $ 359,826 | | Gross: 9.9% Net: -8.6% $ 347,500 | | Gross: 0.0% Net: 0.0% $ 0 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): Comparable 5 is a pending sale in the subject's market area; agent verified contract price and concessions; it is included to support the appraised value of the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | 08/01/2005 $710,000 Tax Records | No prior sale reported in last year Tax Records | No prior sale reported in last year Tax Records | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge    State: VA | Zip: 22191 |
| Lender: Hassan S. Navabi | |

**Identification of Appraisal Report**
This appraisal report is identified as a summary report of a complete appraisal in compliance with the revised Uniform Standards of Professional Appraisal Practice issued by the Appraisal Standards Board of the Appraisal Foundation, effective July 1, 1994.

**Purpose & Function of Appraisal**
The purpose of the appraisal is to estimate the market value of the subject property as defined herein.  The function of the appraisal is to assist the owner in identifying current market value of subject.  This report is not to be used in a Federally related transaction.

This appraisal report is prepared for the sole and exclusive use of the client named on page one of this appraisal.  It is not to be relied upon by any third parties, including insurance companies, for any purpose whatsoever.

**Scope**
The valuation of the subject property has involved a physical inspection (both interior and exterior) of the property under appraisement.  Additionally, data relating to sales, rentals, costs, highest and best use, zoning, etc. has been assembled, analyzed and reconciled into a supportable final opinion of value.

Every effort has been made to conform to FNMA, FHLMC and FHLBB Guidelines and in most cases, an even stricter interpretation found common to most investors in the secondary market.  The comments in this addendum are intended to expand on what the appraiser feels are the areas of most concern to mortgage investors in underwriting an appraisal report.  The expanded narrative allows the appraiser to provide additional comments where sufficient space is not available on the appraisal form.  The market has been thoroughly searched and the sales reported are in the appraiser's opinion the best sales available that properly weigh four major elements of comparison.

**Adverse Environmental Conditions**
The existence of any environmental hazard such as the presence of hazardous wastes, toxic substances, radon gas, asbestos-containing materials, ureaformaldehyde insulation, etc., which may or may not be present in or on the subject property or any site within the vicinity of the property, was not observed by the appraiser and the appraiser has no knowledge of any such environmental hazard.  The appraiser, however, is not qualified to detect such substances.  The presence of substances such as asbestos, ureaformaldehyde foam insulation, radon gas, FRT plywood, mold, lead based paint or other potentially hazardous materials may affect the value of the property.  The value estimate is predicated on the assumption that there is no such material on or in the property that would case a loss in value.  No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them.  The borrower may wish to retain an expert in this field to make an accurate determination concerning the existence of such materials.

In a transaction involving any property, it is advisable to secure professional inspections to help insure against possible defects and/or hazards which might be present.  The appraiser assumes no responsibility for determining that inspections are not necessary.  Neither does the attached appraisal imply that the property is certified to be free of septic safety and adequacy, defective building materials, structural, mechanical and electrical defects, termite and other insect infestations, mold, the presence of radon and other noxious gasses, UFFI and any work done without property building permits.  The appraiser is responsible only for the determination of an opinion of market value as defined in the limiting conditions, a copy of which is attached.

**Cost Approach Comments**
The floor area estimate should be considered an approximation.  Minor deviations in actual square footage are of little or no value consequence.  Physical depreciation reflects both incurable forms of depreciation combined in physical depreciation and is estimated via application of the age/life method.  No functional or external obsolescence noted.

**Comments on Sales Comparison**
Comparables analyzed are considered to be similar to the subject except as noted;  the condition of each is based on the respective agent's comments; and each is considered to be a recent sale of a property most similar to the subject as discovered through research of data available to the appraiser.  Sales chosen in the appraiser's opinion, are the best available indicators of value.

The appraiser has conducted an extensive search for relevant market data from within the subject's immediate neighborhood, as well as from competing subdivisions within the subject's immediate market area.  The search has revealed a sufficient amount of recent sales data to adequately support the final valuation in this report.

The photographs included in this report are unretouched digital photographs.

It is important to note that in the market approach grid, bathrooms are adjusted for on the first line and gross living area/room count are adjusted together, as a single adjustment, on the second line.

The subject's appraised value is greater than the predominant neighborhood value range.  The subject is not considered an over-improvement and the predominant neighborhood value range has no apparent impact on the

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge    State: VA | Zip: 22191 |
| Lender: Hassan S. Navabi | |

**ADDENDUM**

subject's marketability.

It is noted that the price per living area varies by more than $10 per square foot compared to the subject, but the sales chosen are considered to best weigh four major elements of comparison. The price per living area number comparison is easily reduced to an aberration by its very nature and it is not considered a meaningful number in this appraisal. The distortion of these numbers does not reduce the reliability of the valuation.

Any adjustments for site size are based on market abstraction and contributory value. Above a certain point each additional increment of land area contributes less on a per acre or per square foot basis than the initial minimum site size for the area, thus a constant dollar per acre or square foot adjustment was not utilized. This concept relates to diminishing marginal utility and is supported by County tax records. All physical factors of the subject and comparables sites have been weighed in arriving at site adjustments or lack thereof.

**Conditions of Appraisal**
The subject and comparable sales utilized in the report have minor amounts of personal property included in their conveyance. The personal property is considered to be so insignificant that its conveyance had no impact on the comparables' sale prices. No adjustments could be extracted from the market for any personal property conveying with the sales, thus no market adjustment is considered appropriate to the subject for personal property in its conveyance.

**General Comments**
This report may contradict some conditions and certifications required by this form and does not comply with the current Selling Guide. The subject property does not comply with Fannie Mae and/or Freddie Mac and is not intended to be sold in a secondary market transaction involving Fannie Mae or Freddie Mac, or any entity with similar guidelines or property eligibility requirements. The 1993 version of the 1004 form was completed for purposes of this appraisal because the purpose of this appraisal is not for mortgage lending.

This appraisal report was prepared strictly for the intended user as stated as client on page one of this form and their assigns. Intended user is defined as "the client and any other party as identified, by name or type, as users of the appraisal, consulting or review, by the appraiser based on communication with the client at the time of the assignment." Any third-party use of this appraisal report is strictly prohibited and will render this report null and void and Leah W. Powell shall be held harmless of any liability created by any and all third-party use.

I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

My engagement in this assignment was not contingent upon developing or reporting predetermined results.

This report is signed by means of a password protected digital signature.

Based on a database search of the local Multiple Listing System, the subject property has not been listed in this system during the twelve-month period preceding the date of this appraisal. The appraiser notes that the subject property was not listed for sale on the date of inspection.

The appraiser is not a home inspector. This report should not be relied upon to disclose any conditions present in the subject property. The appraisal report does not guarantee that the property is free of defects. A professional home inspection is recommended.

File No. 11-1002

**DEFINITION OF MARKET VALUE:**   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**   The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value.  These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

File No. **11-1002**

**APPRAISERS CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   1601 Wood Duck Court, Woodbridge, VA 22191

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: *Leah W Powell* | Signature: |
| Name: Leah W. Powell | Name: |
| Date Signed: 02/26/2011 | Date Signed: |
| State Certification #: 4001 004735 | State Certification #: |
| or State License #: | or State License #: |
| State: VA | State: |
| Expiration Date of Certification or License: 03/31/2011 | Expiration Date of Certification or License: |
| | ☐ Did    ☐ Did Not Inspect Property |

## LOCATION MAP

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge  State: VA | Zip: 22191 |
| Lender: Hassan S. Navabi | |







## SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge | State: VA  Zip: 22191 |
| Lender: Hassan S. Navabi | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: **February 20, 2011**
Appraised Value: **$ 340,000**



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge | State: VA    Zip: 22191 |
| Lender: Hassan S. Navabi | |



Living Room



Dining Room



Morning Room

Case 11-01184-RGM   Doc 1-1   Filed 04/01/11   Entered 04/01/11 16:10:22   Desc
Exhibit(s)   Page 13 of 16

| | | |
|---|---|---|
| Borrower: Hassan S. Navabi | | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | | Case No.: |
| City: Woodbridge | State: VA | Zip: 22191 |
| Lender: Hassan S. Navabi | | |



Kitchen



Master Bathroom



Master Bedroom

# COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge | State: VA    Zip: 22191 |
| Lender: Hassan S. Navabi | |



**COMPARABLE SALE #1**

16959 Cass Brook Ln
Woodbridge, VA 22191
Sale Date: 01/24/2011
Sale Price: $ 291,555



**COMPARABLE SALE #2**

2810 Burrough Hill Ln
Woodbridge, VA 22191
Sale Date: 11/15/2010
Sale Price: $ 280,000



**COMPARABLE SALE #3**

1596 Fish Hawk Ct
Woodbridge, VA 22191
Sale Date: 09/29/2010
Sale Price: $ 337,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge | State: VA    Zip: 22191 |
| Lender: Hassan S. Navabi | |



**COMPARABLE SALE #4**

1847 Strickland Ct
Woodbridge, VA 22191
Sale Date: 02/14/2011
Sale Price: $ 399,126



**COMPARABLE SALE #5**

15318 Egret Ct
Woodbridge, VA 22191
Sale Date: CD 1/13/2011
Sale Price: $  CP 380,000

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

| | |
|---|---|
| Borrower: Hassan S. Navabi | File No.: 11-1002 |
| Property Address: 1601 Wood Duck Court | Case No.: |
| City: Woodbridge    State: VA | Zip: 22191 |
| Lender: Hassan S. Navabi | |

DEPARTMENT OF PROFESSIONAL AND OCCUPATIONAL REGULATION
COMMONWEALTH OF VIRGINIA
9960 Mayland Dr., Suite 400, Richmond, VA 23233
Telephone: 1 (804) 367-8500

REAL ESTATE APPRAISER BOARD
CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER

LEAH WETMORE POWELL
6223 EDGEWATER DRIVE
FALLS CHURCH VA 22041 0000

EXPIRES ON 03-31-2011

NUMBER 4001 004735

Joy W. DeBoer, Director

ALTERATION OF THIS DOCUMENT, USE AFTER EXPIRATION, OR USE BY PERSONS OR FIRMS OTHER THAN THOSE NAMED MAY RESULT IN CRIMINAL PROSECUTION UNDER THE CODE OF VIRGINIA.

(SEE REVERSE SIDE FOR NAME AND/OR ADDRESS CHANGE)